IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
(GAINESVILLE DIVISION)

FILED IN CLERK'S OFFICE
U.S.D.C. -Gainesville

SEP 2 1 2012

JAMES N. HATTEN, Clerk
By: Vicki Dougherty, Deputy Clerk

| | |
|---|---|
| ST. PAUL MERCURY INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> CHARLES M. MILLER; TRENT D. FRICKS; and the FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for COMMUNITY BANK & TRUST of Cornelia, Georgia, <br><br> Defendants. | Case No: 2:12-CV- 225 |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff St. Paul Mercury Insurance Company ("Travelers"), for its Complaint against Defendants Charles M. Miller ("Miller") and Trent D. Fricks ("Fricks"), and the Federal Deposit Insurance Corporation (the "FDIC"), as receiver for Community Bank & Trust of Cornelia, Georgia ("CB&T"), alleges as follows:

## NATURE OF THE ACTION

1. In this action, Travelers seeks a declaratory judgment that a management liability policy (the "Policy") it issued to CB&T's holding company does not afford coverage for an underlying lawsuit brought by the FDIC, as CB&T's receiver, against Miller and Fricks alleging that, as CB&T officers, they breached duties of care owed to CB&T in their management of a loan program. The underlying lawsuit is captioned *Federal Deposit Insurance Corp. v. Charles M. Miller, et al.*, No. 2:12-CV-00042-WCO (N.D. Ga.) (the "CB&T Action"). Coverage under the Policy for the CB&T Action is barred for at least two reasons. First, the Policy's Unrepaid Loan Carve-Out, which precludes coverage for unrepaid, unrecoverable or outstanding loans, applies because the *amounts* for which the FDIC seeks to hold the directors and officers legally liable in the CB&T Action include only unrepaid, unrecoverable and outstanding loans issued by CB&T. Second, the Policy's Insured versus Insured Exclusion (the "IvI Exclusion"), which precludes coverage for any Claim "brought or maintained by or on behalf of" CB&T, applies to the CB&T Action where the FDIC, acting as CB&T's receiver, asserts claims that belonged to CB&T prior to its closure.

## PARTIES

2.	Travelers is a Connecticut corporation with its principal place of business in Hartford, Connecticut.

3.	Upon information and belief, Defendant Charles M. Miller is a citizen and resident of the State of Georgia and previously served as President, Chief Executive Officer, and a director of CB&T.

4.	Upon information and belief, Defendant Trent D. Fricks is a citizen and resident of the State of Georgia and previously served as Senior Vice President of a Retail Banking Group of CB&T.

5.	The FDIC is a corporation organized and existing under the laws of the United States of America, with its principal place of business in Washington, D.C. *See* 12 U.S.C. § 1819. On information and belief, CB&T was a state-chartered bank, insured by the FDIC and headquartered in Cornelia, Georgia (Habersham County). On January 29, 2010, the Georgia Department of Banking and Finance closed CB&T and appointed the FDIC as receiver for CB&T. Pursuant to 12 U.S.C. § 1821(d)(2)(A)(i), the FDIC thereupon succeeded to all rights, titles, powers, and privileges of CB&T. This action is brought against the FDIC in its capacity as receiver for CB&T.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over these claims pursuant to 12 U.S.C. § 1819(b)(2)(A) and 28 U.S.C. § 1331 because all suits to which the FDIC is a party are deemed to arise under the laws of the United States.

7. Venue is proper in the Northern District of Georgia (and its Gainesville Division), pursuant to 28 U.S.C. § 1391(b) and Local Rule 3.1(B)(3), because a substantial part of the events or omissions giving rise to this action occurred in this Division of the District.

8. Travelers brings this declaratory judgment action pursuant to 28 U.S.C. §§ 2201 and 2202. An actual controversy within the meaning of 28 U.S.C. § 2201 exists between the parties regarding the existence of coverage under the Policy for the CB&T Action.

## FACTUAL ALLEGATIONS

### The Policy

9. Travelers issued SelectOne for Community Banks Policy No. EC06800814 (the aforementioned "Policy") to CB&T's holding company, Community Bankshares, Inc. A true and correct copy of the Policy is attached hereto as Exhibit A.

4

10.     The Policy was effective for the claims-made Policy Period[1] from May 30, 2007 to May 30, 2010, when the Policy was non-renewed. (Ex. A, Declarations, Policy Period). At the time of the non-renewal, an Additional Extended Discovery Period ("Discovery Period") was purchased, which was in effect from May 30, 2010 to May 30, 2011. (*Id.*, Endorsement CB030).

11.     The Policy's Management Liability Insuring Agreement includes Directors and Officers Individual Coverage (the "D&O Coverage"), which provides:

> The Insurer shall pay on behalf of the Insured Persons Loss for which the Insured Persons are not indemnified by the Company and which the Insured Persons become legally obligated to pay on account of any Claim first made against them, individually or otherwise, during the Policy Period . . . or, if exercised, the Additional Extended Discovery Period, for a Management Practices Act taking place before or during the Policy Period.

(*Id.*, Management Liability Insuring Agreement ("MLIA"), D&O Coverage).

12.     The Policy's definition of an Insured includes Insured Persons which, in turn, includes Directors or Officers. (*Id.*, General Terms, Conditions, and Limitations ("GTC&L"), Definitions).

---

[1] Capitalized terms are defined in the Policy.

5

13. A Director or Officer means "any natural person who was, now is or shall be a duly elected or appointed director, officer, member of the board of managers, or management committee member of any Company . . . ." (*Id.*).

14. A Company is defined to include Community Bankshares, Inc. and its Subsidiaries, such as CB&T. (*Id.*).

15. The Policy's definition of a Claim includes "a civil proceeding against any Insured commenced by the service of a complaint or similar pleading." (*Id.*).

16. A Management Practices Act is defined, in pertinent part, as "any error, misstatement, misleading statement, act, omission, neglect, or breach of duty actually or allegedly committed or attempted by any Insured Person in their capacity as such . . . ." (*Id.*).

17. The D&O Coverage is subject to a $5 million Limit of Liability for all Loss on account of all Claims first made during the same Policy Year. (*Id.*, Declarations, Limits of Liability; *id.*, GTC&L, Limits of Liability, Retentions and Coinsurance).

18. The D&O Coverage also provides an additional $1 million in excess coverage for "Loss for which the Directors or Officers are not indemnified by the Company and which the Directors or Officers become legally obligated to pay on account of any Claim first made against them, individually or otherwise, during the

6

Policy Period . . . or, if exercised, the Additional Extended Discovery Period." (*Id.*, MLIA, Extensions).

19.  Defense Costs are part of, and not in addition to, the Limit of Liability under any Insuring Agreement and, therefore, reduce and may exhaust such limits. (*Id.*, GTC&L, Limits of Liability, Retentions and Coinsurance).

20.  The Policy provides that it is the duty of the Insureds and not the duty of the Insurer to select counsel and defend any Claim covered under any applicable Insuring Agreement. (*Id.*, Declarations, Duty to Defend; *id.*, GTC&L, Defense and Settlement; *id.*, MLIA, Duty to Defend Provision).

21.  The Policy further provides that "the Insurer shall advance, on behalf of the Insureds, Defense Costs which the Insureds have incurred in connection with Claims made against them, before the disposition of such Claims . . . ."(*Id.*, GTC&L, Defense and Settlement).

22.  The Policy's D&O Coverage extends only to Loss, as that term is defined in the Policy. (*Id.*, MLIA, D&O Coverage).

23.  The Policy's definition of Loss includes "Damages, judgments, settlements and Defense Costs," but expressly *excludes* "any unrepaid, unrecoverable or outstanding loan, lease or extension of credit to any Affiliated Person or Borrower." (*Id.*, GTC&L, Definitions).

24. A Borrower is "any individual or entity that is not an Affiliated Person and to which the Company extends, agrees to extend, or refuses to extend, a loan, lease or extension of credit." (*Id.*).

25. The Policy's IvI Exclusion provides:

The Insurer shall not be liable for Loss [including Defense Costs] on account of any Claim made against any Insured:

\* \* \*

4. brought or maintained by or on behalf of any Insured or Company [including CB&T] in any capacity, except:

   (a) a Claim that is a derivative action brought or maintained on behalf of the Company by one or more persons who are not Directors or Officers and who bring and maintain such Claim without the solicitation, assistance or active participation of any Director or Officer;

   (b) a Claim brought or maintained by a natural person who was a Director or Officer, but who has not served as a Director or Officer for at least six-years preceding the date the Claim is first made, and who brings and maintains the Claim without the solicitation, assistance or active participation of any Director or Officer who is serving as a Director or Officer or was serving as a Director or Officer within such six-year period;

   (c) a Claim brought or maintained by or on behalf of any Insured Person for an Employment Practices Act;

   (d) a Claim brought or maintained by any Insured Person for contribution or indemnity, if the Claim results from another Claim covered under this Policy;

8

(e) only with respect to any Fiduciary Liability Insuring Agreement made part of this Policy, a Claim brought or maintained by or on behalf of any Employee of the Company for any Fiduciary Act;

(f) a Claim brought by an Insured Person solely in his or her capacity as a customer of the Company for a Trust Act or a Professional Services Act, provided that such Claim is instigated totally independent of, and totally without the solicitation, assistance, active participation, or intervention of, any other Insured; or

(g) a Claim brought or maintained in a jurisdiction outside of the United States of America, Canada or Australia by an Insured Person of a Company incorporated or chartered in a jurisdiction outside of the United States of America.

(*Id.*, GTC&L, Exclusion 4.).

## The CB&T Action

26. The FDIC filed its complaint (the "Complaint") in the CB&T Action on February 24, 2011. A true and correct copy of the Complaint is attached hereto as Exhibit B.

27. In the Complaint, the FDIC, as CB&T's receiver, seeks "to recover damages in excess of $11 million for losses" that were allegedly "caused by Miller's and Frick's breach of fiduciary duties, negligence, and gross negligence related to CB[&]T's Home Funding Loan Program (the "HFLP") between January 6, 2006 and December 2, 2009." (Ex. B, ¶ 11).

9

28.     The Complaint alleges that Miller and Fricks breached duties of care owed to CB&T in their management and oversight of the HFLP. (*Id.*, ¶ 32).

29.     At Paragraph 26, the Complaint specifically identifies a "sampling" of sixteen (16) HFLP loan losses allegedly sustained as a result of Miller and Frick's mismanagement, which allegedly are emblematic of losses sustained on other HFLP loans issued after November 14, 2007. Paragraph 26 provides the following information in table format:

| Borrower | Credit Amount | Estimated Loss |
|---|---|---|
| Milton Aubrey Solomon | $ 124,050.00 | $ 85,389.42 |
| Rahman, Iliyas | $ 115,900.00 | $ 42,697.55 |
| Kirby, Lora | $ 114,360.22 | $ 102,698.03 |
| Lewis, Belinda | $ 172,118.99 | $ 163,506.58 |
| Holloway, Leslie | $ 279,033.20 | $ 13,658.20 |
| Bowen, Josh Lee | $ 110,820.00 | $ 48,186.61 |
| Crawshaw, Dale | $ 452,469.00 | $ 129,341.40 |
| Hennington, Dexter | $ 471,672.49 | $ 301,288.59 |
| 911 Homebuyers, LLC | $ 210,700.25 | $ 178,385.36 |
| Johnson, Tracy | $ 299,600.00 | $ 203,732.50 |
| Atlanta United, LLC | $ 431,149.00 | $ 131,149.00 |
| SthrnInvstmntsHldngs | $ 549,159.91 | $ 549,159.91 |
| 3 Idiots Investments | $ 106,758.73 | $ 76,475.39 |
| Samuel Properties | $ 240,000.00 | $ 72,000.00 |
| Redding, Virgil | $ 299,843.43 | $ 8,164.62 |
| Warsaw Dynamics | $ 266,266.03 | $ 56,307.85 |
| | $ 4,243,901.25 | $ 2,162,141.01 |

(*Id.*).

30.     On information and belief, the identified HFLP loan losses consist of the unrepaid portion of the identified loans.

31.     On information and belief, both Miller and Fricks deny any wrongdoing or liability in the CB&T Action.

10

## COUNT I

## Declaratory Judgment
## The Unrepaid Loan Carve-Out Bars Coverage for the CB&T Action

32. Travelers repeats and incorporates by reference the allegations in Paragraphs 1 through 31 above, as if fully set forth herein.

33. The Policy only provides coverage for amounts that are covered Loss, as that term is defined in the Policy.

34. Loss is defined to mean "the amount which the Insureds become legally obligated to pay on account of each Claim and for all Claims made against them during the Policy Period, the Automatic Discovery Period or, if exercised, the Additional Extended Discovery Period, for Wrongful Acts for which coverage applies, including Damages, judgments, settlements and Defense Costs.

35. Pursuant to the Policy's Unrepaid Loan Carve-Out, "Loss does not include . . . any unrepaid, unrecoverable or outstanding loan . . . or extension of credit to any . . . Borrower."

36. Consequently, by substituting the definition of Loss into the Unpaid Loan Carve-Out, the Unrepaid Loan Carve-Out provides that: "the amount which the Insureds become legally obligated to pay on account of each Claim . . . including Damages, judgments, settlements and Defense Costs . . . does not include

. . . any unrepaid, unrecoverable or outstanding loan, lease or extension of credit to any Affiliated Person or Borrower."

37. The amounts for which the FDIC seeks to hold the directors and officers legally liable in the CB&T Action are unrepaid, unrecoverable or outstanding loans to Borrowers.

38. Accordingly, the Unrepaid Loan Carve-Out bars coverage for the amounts sought in the CB&T Action.

39. Travelers therefore is entitled to a declaratory judgment that the Unrepaid Loan Carve-Out precludes coverage for the amounts sought in the CB&T Action.

## COUNT II

### Declaratory Judgment
### The IvI Exclusion Bars Coverage for the CB&T Action

40. Travelers repeats and incorporates by reference the allegations in Paragraphs 1 through 39 above, as if fully set forth herein.

41. As described above, the Policy's IvI Exclusion bars coverage for any Claim "brought or maintained by or on behalf of any Insured," including CB&T.

42. The FDIC brings the CB&T Action as CB&T's receiver, alleging that Miller and Fricks breached duties owed to CB&T prior to its closure.

43. The CB&T Action is a Claim brought or maintained by or on behalf of CB&T and none of the exceptions to the IvI Exclusion apply.

44. Accordingly, the IvI Exclusion bars coverage under the Policy for the CB&T Action.

45. Travelers therefore is entitled to a declaratory judgment that the Policy's IvI Exclusion precludes coverage under the Policy for the CB&T Action.

## COUNT III

### Reservation of Rights

46. Travelers repeats and incorporates by reference the allegations in Paragraphs 1 through 45 above, as if fully set forth herein.

47. Travelers has reserved all of its rights under the Policy and applicable law. By seeking a declaratory judgment based on the foregoing provisions of the Policy, Travelers does not waive any potential coverage defenses pursuant to any of the Policy's other terms, conditions, and exclusions. Developments in connection with this lawsuit may render additional defenses to coverage ripe for judicial determination.

## **PRAYER FOR RELIEF**

WHEREFORE, Travelers prays that this Court order, adjudge and decree the following relief:

A.   A judicial declaration that the Policy's Unrepaid Loan Carve-Out bars coverage for the amounts sought in the CB&T Action;

B.   A judicial declaration that the Policy's IvI Exclusion bars coverage for the CB&T Action;

C.   A judicial declaration that Travelers has no duty to advance defense costs or indemnify Miller and Fricks in response to the CB&T Action;

D.   A judicial declaration of the respective rights and obligations of Travelers and Miller and Fricks under the Policy with respect to the CB&T Action; and

E.   An Order awarding Travelers such additional relief as shall be found to be appropriate under the circumstances.

Dated: September 21, 2012                Respectfully submitted,

_____
Frederick E. Link (Bar No. 453150)
HARTNESS & LINK, P.C.
620 Spring Street
Gainesville, Georgia 30501
Tel: (770) 535-7000
Fax: (770) 531-9491
Freddie.Link@bellsouth.net

*Counsel for Plaintiff*
*St. Paul Mercury Insurance Company*