## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

| | |
|---|---|
| ST. PAUL MERCURY INSURANCE COMPANY, : : | |
| Plaintiff, : | CIVIL ACTION NO. |
| : | 2:12-CV-0225-RWS |
| v. : | |
| : | |
| CHARLES M. MILLER, et al., : | |
| Defendants. : | |

## **ORDER**

### **Introduction and Background**

Plaintiff instituted the instant action seeking a declaration that it is under no duty to pay for the defense of or to indemnify Defendants Charles Miller and Trent Fricks in an underlying lawsuit against them under the terms of a directors and officers liability insurance policy. The background of the case is as follows: Miller and Fricks worked at Community Bank & Trust of Cornelia, Georgia (CB&T). Fricks was involved in approving certain loans. Miller supervised Fricks. CB&T failed, and Defendant the Federal Deposit Insurance Corporation (FDIC) took over the bank as receiver and sued Fricks in this Court for his role in improperly approving loans and also sued Miller for his negligent supervision of Fricks. Federal Deposit Insurance Corp. v. Charles M Miller, et al., No. 2:12-CV-00042-WCO (N.D. Ga.) (the underlying action). That action remains pending.

Plaintiff agreed to provide Miller and Fricks the costs of defense of the underlying action under a reservation of rights and initiated this action against Miller, Fricks and the FDIC, asserting that it is under no duty to provide for the defense of or to indemnify Miller and Fricks in the underlying action.

Now pending before the Court are several motions that reflect one of the fundamental disagreements by the parties about this case. Plaintiff has filed a motion for summary judgment, [Doc. 23], in which it contends that under the unambiguous terms of the policy, there is no coverage for the underlying action. Defendants, notably the FDIC, have responded by arguing, *inter alia*, that further discovery is needed before this Court considers Plaintiff's substantive arguments. The FDIC has filed a motion to extend discovery, [Doc. 80], and, complains that Plaintiff has not been sufficiently forthcoming in response to its discovery requests.

For its part, Plaintiff asserts that under Georgia insurance law, discovery is not needed because if the terms of the insurance policy are unambiguous, this Court's inquiry into whether coverage exists is therefore limited to the terms of the policy and the claims raised in the underlying complaint.

At a recent hearing, [see Doc. 87], held in an effort to resolve the discovery dispute, Plaintiff again argued that further discovery is not necessary while the FDIC contended that it is entitled to a seemingly vast amount of electronic information from

Plaintiff. This Court initially directed the parties to submit their arguments related to the FDIC's discovery request. Upon further reflection and a review of Georgia law, however, this Court has determined that discovery in this type of case is often not necessary, and judicial efficiency demands consideration of the question of whether the policy is ambiguous such that parol evidence is admissible to determine the parameters of Plaintiff's liability.

After careful consideration of the parties' arguments and the relevant law, this Court now concludes that, in material part, the policy is not ambiguous, that any ambiguity in the policy can be resolved without resort to parol evidence, that Defendants are thus not entitled to further discovery, and that, because Plaintiff's motion for summary judgment has been fully briefed by the parties, this Court should rule on that motion as well, ultimately concluding that Plaintiff has no duty under the policy to pay to defend or to indemnify Defendants.

## Discussion

A. <u>Whether the Policy is Ambiguous such that Further Discovery is Necessary</u>

Under Georgia law,

> insurance is a matter of contract, and the parties to an insurance policy are bound by its plain and unambiguous terms. Thus, when faced with a conflict over coverage, a trial court must first determine, as a matter of law, whether the relevant policy language is ambiguous. A policy which

3

>is susceptible to two reasonable meanings is not ambiguous if the trial court can resolve the conflicting interpretations by applying the rules of contract construction. Where a term of a policy of insurance is susceptible to two or more reasonable constructions, and the resulting ambiguity cannot be resolved, the term will be strictly construed against the insurer as the drafter and in favor of the insured. If a policy exclusion is unambiguous, however, it must be given effect even if beneficial to the insurer and detrimental to the insured. We will not strain to extend coverage where none was contracted or intended.

Hays v. Georgia Farm Bureau Mut. Ins. Co., 722 S.E.2d 923, 925 - 926 (Ga. Ct. App. 2012) (citations, quotations, alterations and punctuation omitted). In other words, even if the policy is ambiguous, liability can be determined without resort to matters outside the four corners of the policy simply by first applying the rules of construction and, if that fails, construing the ambiguity against the insurer, a result which should give Defendants no reason to complain. Conceivably, contract language could be so ambiguous that it could have several possible meanings, in which case resort to parol evidence might be necessary. However, in this case, the ambiguity, if it exists, would yield only two possible outcomes: coverage or no coverage. If this Court concludes that the language is ambiguous, that means there is coverage and Defendants win. As a result, it is clear that further discovery is not necessary.

Moreover, in considering the type of discovery that Defendants seek – Plaintiff's internal information and communications – this Court is not at all convinced that the requests could lead to the discovery of admissible evidence. What the FDIC wants to

AO 72A
(Rev.8/82)

discover – e.g., what Plaintiff's agents and employees thought about the language of the policy, what they thought about Plaintiff's potential liability in this case, how Plaintiff reacted to similar facts in different cases, what the drafters of the policy were thinking, and the issues of underwriting, reserves, and reinsurance – none of these issues matter to the outcome of this case. What matters is this Court's legal interpretation of the language of the policy. To put it another way, considering, for example, what one of Plaintiff's agents might have written in an email about his interpretation of the policy would be akin to considering expert legal opinion which is inadmissible under Fed.R.Evid. 702. See Plantation Pipeline Co. v. Continental Cas. Co., 2008 WL 4737163 at *7 (N.D. Ga. 2008) (citing cases for the proposition that the legal effect of the terms of an insurance policy is left for the court to determine and a witness' opinion about the meaning of contract term is immaterial). To the degree that the FDIC asserts that Plaintiff's internal documents will provide insight into the intent of the parties, "we do not consider any extrinsic evidence of the parties' intent when the contract language is unambiguous." Simpson v. Pendergast, 659 S.E.2d 716, 720 (Ga. Ct. App. 2008).

B. <u>Plaintiff's Motion for Summary Judgment</u>

Having determined that further discovery is not necessary in this case, this Court will turn to Plaintiff's summary judgment motion. Under the Federal Rules, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" <u>Hickson Corp. v. N. Crossarm Co.</u>, 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (internal quotations omitted)). Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 257 (1986).

In resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. <u>Patton v. Triad Guar. Ins. Corp.</u>, 277 F.3d 1294, 1296 (11th Cir. 2002). However, this Court is bound only to draw those inferences which are reasonable. "Where the record

6

AO 72A
(Rev.8/82)

taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249–50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met its burden under Rule 56(a), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts").

C. Discussion of the Parties' Summary Judgment Arguments[1]

Plaintiff contends that there is no coverage under the policy for two reasons. First, Plaintiff contends that the loss claimed by the FDIC in the underlying suit is for unrecovered loans, and the policy expressly excludes from the definition of loss "any

---

[1] Miller and Fricks have adopted the SEC's arguments in opposition to summary judgment as well as proffered a few arguments of their own. [Doc. 42]. However, their separate arguments relate mostly to the loss carve-out for unrepaid loans, which, as is discussed in the text, is ambiguous and does not bar coverage in this case. Accordingly, in the discussion this Court refers to the arguments of the FDIC but acknowledges here that they are also proffered by Miller and Fricks.

Unrelated to the preceding paragraph, there is no dispute (1) that Miller and Fricks are insureds covered by the policy such that suits against them in their capacity as officers of CB&T would, save for the exclusions discussed in the text, entitle them to coverage under the policy, (2) that the policy was in effect during the relevant period, and (3) that Defendants timely notified Plaintiff regarding the suit.

unrepaid, unrecoverable or outstanding loan, lease or extension of credit to any . . . Borrower." Second, Plaintiff argues that coverage is excluded under the terms of the "Insured versus Insured" exclusion (the Insured v. Insured exclusion), which bars coverage for claims "brought or maintained by or on behalf of any Insured . . . in any capacity."

In response to Plaintiff's first argument, and without going into a detailed discussion because this Court ultimately concludes that coverage is barred under the Insured v. Insured exclusion, this Court notes that the definition of loss which carves out unpaid loans is ambiguous in this context. Should the FDIC prevail in its action against Miller and Fricks, it would be entitled to recover tort damages caused to the bank by Miller's and Fricks' actions. Admittedly, those damages would be determined by calculating the total amount of certain unrepaid loans. However, the underlying lawsuit was not instituted to recover sums under the terms of a loan agreement – the damages, if awarded, would have been proximately caused by the tortious acts of Miller and Fricks. As such, it is not at all clear to this Court that the carve-out in the "loss" definition would apply in this circumstance. Put simply, the carve-out is ambiguous and this Court must therefore read it against the insurer. This Court further agrees with the FDIC's argument that if Plaintiff had wanted to exclude these kinds of damages from coverage it could have easily done so by, for example, excluding claims

"relating to, arising out of, or attributable to" certain loans. Finally, this Court notes that Plaintiff's heavy reliance on <u>Southwest Georgia Financial Corp. v. Colonial American Casualty & Surety Co.</u>, 397 F. Appx. 563 (11th Cir. 2010), is misplaced. Again, without going into too much detail, the damages that the insured in <u>Southwest</u> was required to pay constituted the funds that had made up actual unpaid loan balances.

As mentioned above, however, the Insured v. Insured exclusion is not ambiguous and it bars coverage. Under that exclusion, Plaintiff

> shall not be liable for Loss on account of any Claim made against any Insured . . . . brought or maintained by or on behalf of any Insured or Company in any capacity, except:
>
> (a) a Claim that is a derivative action brought or maintained on behalf of the Company by one or more persons who are not Directors or Officers and who bring and maintain such Claim without the solicitation, assistance or active participation of any Director or Officer;
>
> (b) a Claim brought or maintained by a natural person who was a Director or Officer, but who has not served as a Director or Officer for at least six years preceding the date the Claim is first made, and who brings and maintains the Claim without the solicitation, assistance or active participation of any Director or Officer who is serving as a Director or Officer or was serving as a Director or Officer within such six year period;
>
> (c) a Claim brought or maintained by or on behalf of any Insured Person for any Employment Practices Act;

>(d) a Claim brought or maintained by any Insured Person for contribution or indemnity, if the Claim directly results from another Claim covered under this Policy;
>
>(e) only with respect to any Fiduciary Liability Insurance Agreement made part of this Policy, a Claim brought or maintained by or on behalf of any Employee of the Company for any Fiduciary Act;
>
>(f) a Claim brought by an Insured Person solely in his or her capacity as a customer of the Company for a Trust Act or a Professional Services Act, provided that such Claim is instigated totally independent of, and totally without the solicitation, assistance, active participation, or intervention of, any other Insured; or
>
>(g) a Claim brought or maintained in a jurisdiction outside of the United States of America, Canada or Australia by an Insured Person of a Company incorporated or chartered in a jurisdiction outside of the United States of America, Canada or Australia;

[Doc. 23-4 at 31-32].

In the context of this action, this Court finds that the Insured v. Insured exclusion is not ambiguous. Section 1821(d)(2)(A)(i) of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), Pub. L. 101-73, 103 Stat. 183, states that "the [FDIC] shall, . . . by operation of law, succeed to all rights, titles, powers, and privileges of the insured depository institution." 12 U.S.C. § 1821(d)(2)(A)(i). Under this language, the FDIC "as receiver 'steps into the shoes' of the failed [financial institution] . . . obtaining the rights of the insured depository

institution that existed prior to receivership." O'Melveny & Myers v. F.D.I.C., 512 U.S. 79, 86 (1994) (citation and quotation omitted). In O'Melveny, the Supreme Court held that in litigation by the FDIC as a receiver asserting claims of a savings and loan, any defense that the defendants in that action could successfully have raised against the savings and loan are also good against the FDIC. Id. The Court found unavailing the FDIC's arguments in support of a "federal common law" rule that would essentially give the FDIC special status when prosecuting a civil action under state law. Id. at 88 ("[T]here is no federal policy that the [federal deposit insurance] fund should always win.").

In this case, this Court finds that the FDIC has stepped into the shoes of CB&T, and, under O'Melveny, whatever claims would have been good against CB&T are also good against the FDIC. The Insured v. Insured exclusion expressly excludes from coverage suits brought by an insured against another insured. If CB&T had sued Miller and Fricks, the exclusion would have applied to absolve Plaintiff from a duty to provide coverage to Miller and Fricks. As such, the exclusion applies equally to the FDIC.

This Court further notes that not applying the exclusion in this context would have the effect of reading the phrase, "on behalf of," out of the policy in contravention of the rule that requires this Court to construe a contract "in whole and in every part."

11

O.C.G.A. § 13-2-2(4). Outside of a shareholder derivative suit, which is expressly carved out of the Insured v. Insured exclusion, [see Doc. 23-4 at 31], it is exceptionally rare for someone other than the FDIC (or its analogues such as the Resolution Trust Corporation, the Federal Savings and Loan Insurance Corporation and the occasional state agency) to raise a claim on behalf of a federally insured bank.[2] Under 11 U.S.C. § 109(b)(2), banks cannot file for bankruptcy, and there thus can be no bankruptcy trustee filing suits against directors or officers. Aside from a derivative action, the only party that could bring an action on a federally insured bank's behalf is the FDIC, demonstrating that the exclusion speaks specifically to this circumstance.

The FDIC asserts a number of arguments in support of its contention that the Insured v. Insured exclusion should not apply. First, the FDIC correctly points out that a number of courts have held that an insured v. insured exclusion does not apply to the FDIC as a receiver for failed banks. None of those cases, however, are binding on this court whereas the Supreme Court's O'Melveny opinion strongly indicates that the exclusion should be given effect. Moreover, while the FDIC asserts that there is a majority view among courts that hold that insured v. insured provisions do not apply

---

[2] The one example that this Court could find was the rarely-used ability of a bank's depositors to file a derivative suit on behalf of a bank, but, to obtain standing, the depositors must first demand that the receiver sue. See Hamid v. Price Waterhouse, 51 F.3d 1411 (9th Cir. 1995); Popkin v. Jacoby (In re Sunrise Sec. Litig.), 916 F.2d 874 (3d Cir.1990).

AO 72A
(Rev.8/82)

to the FDIC when it acts as a receiver, it is difficult to recognize such a majority when the language of the exclusions among the cases is different. For example, the FDIC cites to three[3] cases for the proposition that "several courts held that the FDIC as receiver acts in multiple capacities, and the exclusion does not apply." [Doc. 36 at 20]. However, in none of those cases did the insured v. insured exclusion state that it applied to claims brought "on behalf of" an insured as is the case here. See American Cas. Co. of Reading, Pennsylvania v. Sentry Federal Sav. Bank, 867 F. Supp. 50, 59 (D. Mass. 1994); Slaughter v. American Cas. Co. of Reading, Pennsylvania, 842 F. Supp. 371, 374 (E.D. Ark. 1993) rev'd 37 F.3d 385 (8th Cir. 1994); Federal Deposit Ins. Corp. v. Zaborac, 773 F. Supp. 137, 142 (C.D. Ill. 1991). Indeed, as was discussed by Judge Batten in Davis v. BancInsure, Inc., 2013 WL 1223696 at *8-*9 (N.D. Ga. 2013), the result of the cases determining whether to apply an insured v. insured exclusion to the FDIC usually turns more on the language of the exclusion rather than the adoption by courts of a supposed majority or minority rule.

In response to those cases that the FDIC cites for the proposition that, "because the purpose of the insured v. insured exclusion is to prevent collusive suits, the exclusion is inapplicable to the FDIC as receiver claims, which clearly are not

---

[3] It actually cited to four, but the fourth case citation was inaccurate. [See Doc. 36 at 20 n.25].

collusive," [Doc. 36 at 20], this Court cannot refuse to give effect to an unambiguous term of the policy based on an assumption of why the language was put into the policy.

Regarding the shareholder derivative carve-out to the Insured v. Insured exclusion, the underlying action is clearly not a derivative suit. According to Black's Law Dictionary a derivative action is

> [a] suit by a beneficiary of a fiduciary to enforce a right belonging to the fiduciary; esp[ecially], a suit asserted by a shareholder on the corporation's behalf against a third party (usu[ally] a corporate officer) because of the corporation's failure to take some action against the third party.

BLACK'S LAW DICTIONARY (9th ed. 2009).

Obviously, the FDIC cannot be considered a beneficiary and CB&T is not its fiduciary. Moreover, Rule 23.1 of the Federal Rules of Civil Procedure imposes certain pleading prerequisites for shareholder derivative actions, and the FDIC's complaint in the underlying action does not meet those requirements.

Finally, regarding those cases that refuse to enforce an insured v. insured exclusion because of public policy concerns, this Court disagrees with the notion that it is acceptable to rewrite a contract between private parties in the name of saving the taxpaying public money. Again, there is no rule that the federal insurance fund should always win.

After discussing the cases which have declined to apply an insured v. insured exclusion to bar coverage for a suit brought by the FDIC, the FDIC next argues that insurers, including Plaintiff, often include language in their policies excluding suits by regulatory bodies, sometimes expressly mentioning suits filed by the FDIC. However, the fact that Plaintiff may have at times included a regulatory exclusion in other policies that it has sold cannot be interpreted to change the plain meaning of this policy. As this Court has repeatedly stated, the Insured v. Insured exclusion is not ambiguous, and, as a result, evidence of what Plaintiff might have done with another customer cannot inform this Court's interpretation of the policy language.

In summary, this Court concludes that under the terms of the Insured v. Insured exclusion in the policy, Plaintiff is under no duty to provide coverage for the suit instituted by the FDIC against Miller and Fricks. Because the exclusion relates to the FDIC's status as standing in the shoes of CB&T – in other words, because the FDIC has brought the suit on CB&T's behalf – the nature of the claims raised in the suit and the broadness of an insurer's duty to defend under Georgia law are immaterial as Plaintiff would have no duty of coverage to Miller and Fricks in any suit filed by the FDIC as CB&T's receiver.

15

**Conclusion**

For the reasons stated above,

**IT IS HEREBY ORDERED** that Plaintiff's motion for summary judgment, [Doc. 23], is **GRANTED**, and the Clerk is **DIRECTED** to enter judgment in this matter in favor of Plaintiff. All other pending motions, [Docs. 26, 53, 80, and 84] are **DENIED** as moot.

**IT IS SO ORDERED,** this  19th  day of August, 2013.

_____
**RICHARD W. STORY**
United States District Judge

AO 72A
(Rev.8/82)